## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 12-CR-2332-CVE** |
| | ) | |
| **DANNY BURNETT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION AND ORDER</u>

Now before the Court is defendant's Motion to Compel Production of Information pursuant to the Brady Doctrine and Rule 16 with Supporting Authorities (Dkt. # 18). Defendant Danny Burnett argues that he will be unable to prepare a defense unless plaintiff is compelled to provide additional discovery, and he states that the parties have been unable to resolve certain discovery disputes. The government responds that it has produced much of discovery sought by defendant, and the remainder of the discovery requested by defendant is not in the government's possession or is privileged. Dkt. # 19. The Court previously entered a scheduling order (Dkt. # 14) setting a hearing on discovery motions for March 13, 2013. After reviewing defendant's motion to compel and the government's response, the Court finds that a hearing on plaintiff's motion to compel is premature, and the March 13, 2013 hearing will be stricken.[1]

---

[1]     As will be explained herein, the Court will conduct a telephonic hearing in April 2013 as to any discovery disputes that the parties believe are not fully resolved by this Opinion and Order or by subsequent agreement of the parties.

# I.

This case arises out of an investigation into the illegal smuggling of firearms from the United States to Mexico.  In United States v. Ignacio Villalobos et al., 11-CR-487-RB (D.N.M.), eleven defendants were charged in an 84 count indictment with conspiracy to commit an offense against the United States, making false statements to acquire firearms, and smuggling goods from the United States.  One of the defendants, Angelo Vega, was the chief of police in Columbus, New Mexico and, pursuant to an information, he later pled guilty to conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (count one), smuggling goods from the United States in violation of 18 U.S.C. § 554 (count two), and interference with commerce by threats or violence in violation of the Hobbs Act, 18 U.S.C. § 1951 (count three).  Vega pled guilty pursuant to a plea agreement, which was filed under seal.  Villalobos, 11-CR-487-BR, Dkt. # 187.

Defendant is a retired teacher, principal, and superintendent.[2]  When defendant was the superintendent of schools in Carrizozo, New Mexico, Vega was a "student who was seen as a troublemaker," and defendant worked with Vega to help him "straighten out."  Dkt. # 18, at 8. Defendant kept in touch with Vega over the years and, in February 2011, Vega allegedly contacted defendant and they had lunch at a restaurant in Albuquerque, New Mexico.  Defendant denies that he knew of an investigation of Vega, and he claims that he did not tell Vega about an ongoing investigation or electronic surveillance of Vega's communications.  Defendant's wife, Paula Burnett, is an Assistant United States Attorney in the District of New Mexico, and she was formerly the chief of the criminal division in that office.  Paula Burnett attended a management meeting on February

---

[2]     For the purpose of this Opinion and Order, the Court will rely on the facts stated in defendant's motion to compel to provide background for defendant's discovery requests.

10 and 11, 2011, and the investigation of Vega came up during the meeting.  According to other assistant United States Attorneys at the meeting, Paula Burnett clarified that Angelo Vega was the target of a wiretap and she recused herself from the case.  She also met with an ethics officer in the Unites States Attorney's Office, demanded an investigation and asked that the entire office be immediately recused from the case.  Paula Burnett's request to recuse the entire office from the Vega investigation was denied, but she was "walled" from the investigation.  Dkt. # 18, at 10.  The United States Attorney's Office for the Western District of Texas took over the <u>Villalobos</u> investigation on June 29, 2011.  Paula Burnett resigned her position chief of the criminal division on September 23, 2012, and she now works in the civil division of the United States Attorney's Office for the District of New Mexico.

On September 20, 2012, a grand jury returned a indictment charging defendant with two counts of illegally giving notice of electronic surveillance to another person in violation of 18 U.S.C. § 2232(d) (counts one and two), disclosure of wire communication in violation of 18 U.S.C. § 2511(1)(c) (count three), and making a false statement to a member of the executive branch of the United States Government in violation of 18 U.S.C. § 1001(a)(2) (count four).  Defendant made his initial appearance on October 10, 2012, and he was released pending trial.  The Court entered a scheduling order, <u>inter alia</u>, setting this matter for a jury trial on December 11, 2012.  The parties requested a status conference to discuss the scheduling order, and a telephonic status conference was held on October 17, 2012.  The parties stated that they needed more than the 70 days of trial preparation authorized under the Speedy Trial Act, 18 U.S.C. § 3161 <u>et seq.</u>, because of the voluminous discovery and complex legal issues involved in this case.  Following the hearing, the parties filed a joint motion (Dkt. # 13) to declare this matter a complex case under the Speedy Trial

3

Act.  The Court granted the joint motion and entered an amended scheduling order.  Dkt. # 14.  The amended scheduling order, inter alia, set a deadline of January 31, 2013 for defendant to file a discovery motion and set the jury trial for September 23, 2013.  Id. at 4.  Defendant's deadline to file a discovery motion was later extended to February 7, 2013.  Dkt. # 17.

On October 18, 2012, the magistrate judge entered a discovery order (Dkt. # 12) requiring the government to produce certain discovery no later than October 26, 2012.  In compliance with the discovery order, the government produced thirteen compact disks containing over 6,000 pages of documents.  The parties held several telephonic conferences in an attempt to resolve discovery disputes, and the government produced another compact disks with approximately 1,000 pages of additional discovery.  Dkt. # 19, at 2.  Shortly before the filing of defendant's motion to compel, the parties conferred and the government agreed to produce certain items on a fifteenth compact disk.  Id. at 3.  The government also states it is preparing a sixteenth compact disk with additional discovery materials, and this disk will be provided to defendant "in the near future."  Id. at 3 n.2.  In total, the government states that it has produced over 8,000 pages of discovery materials on 15 compact disks, including "relevant investigative reports, records, photographs and five disks which contain electronic communications intercepted with Title III authority . . . ."  Dkt. # 19, at 1.

## II.

Defendant has made numerous discovery requests and he claims that the government has refused to produce some of the information that he has requested.  The parties have conferred and they have been unable to resolve certain discovery disputes.  Defendant has filed a motion to compel (Dkt. # 18) and the government has filed a response (Dkt. # 19).  In its response, the government states it has considered each of defendant's requests and has

> 1) produced the requested item on an additional (fifteenth) discovery disk sent to defense counsel on January 30, 2013; or 2) agreed to look for the item if not immediately available and make a determination whether the requested item was in fact discoverable; or 3) informed the defense that the item would not be disclosed at the present time, if at all, and the government's basis in law or fact as to why the request was denied.

Dkt. # 19, at 3.

A criminal defendant has no constitutional right to conduct discovery in the same manner as authorized in a civil case under the Federal Rules of Civil Procedure. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). The Supreme Court has described the scope of discovery in a criminal case as "rather limited," and the broad discovery authorized under Fed. R. Civ. P. 26 is not available to a criminal defendant. Degen v. United States, 517 U.S. 820, 825-26 (1996). Under Fed. R. Crim. P. 16, the government is obligated to allow a defendant to inspect, copy, or photograph any "books, papers, documents, data, photographs, tangible objects . . . within the government's possession, custody, or control . . . ." Fed. R. Crim. P. 16(a)(1)(E). However, not all evidence in the government's possession must be turned over to the defendant, and evidence is discoverable only if:

> (I) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

Id. The term "possession" as used in Rule 16 goes beyond merely that evidence in the custody and control of the United States Attorney, and "[t]here is some duty of inter-agency discovery, which normally can be discharged 'by searching, or requesting that search be made, of the files of administrative or police investigations of the defendant, in addition to his own files.'" United States v. Jensen, 608 F.2d 1349, 1357 (10th Cir. 1979). However, this does not mean that the government

is required to search out all possible exculpatory or impeachment evidence, and it is "well settled that there is 'no affirmative duty upon the government to take action to discover information which it does not possess.'" United States v. Tierney, 947 F.2d 854, 864 (8th Cir. 1991) (quoting United States v. Beaver, 524 F.2d 963, 966 (5th Cir. 1975)).  A defendant must make a specific request for evidence and show how the evidence will be "helpful to the defense."  United States v. Jordan, 316 F.3d 1215, 1250 (11th Cir. 2003).  "Helpful to the defense" means more than a bare assertion that the evidence "bears some abstract logical relationship to the issues in the case" and "[t]here must be some indication that the pretrial disclosure of the [item] would . . . enable [ ] the defendant significantly to alter the quantum of proof in his favor."  Id. at 1251 (quoting United States v. Olana, 62 F.3d 1180, 1203 (9th Cir. 1995)).

Rule 16 does not define "material," but the Tenth Circuit has suggested that Rule 16 was intended as a "reflection of the constitutional due process right established in [Brady v. Maryland, 373 U.S. 83 (1963)]."  United States v. Freeman, 451 Fed. App'x 783, 794 (10th Cir. 2011).[3]  In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court held that Brady applies not only to "exculpatory" evidence but also to evidence that could be used to impeach a government witness.  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different.  A 'reasonable probability' is a

---

[3]     Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

probability sufficient to undermine confidence in the outcome." Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987).  When determining whether evidence is material, a court must consider in light of the entire record if "the omitted evidence creates a reasonable doubt that did not otherwise exist." United States v. Ahrensfield, 698 F.3d 1310, 1319 (10th Cir. 2012).

A.

Defendant argues that the government is obligated to provide him forensic copies of the hard drives of computers and electronic devices seized from Paula Burnett's office, and he seeks copies of documents attached to a forensic report describing the contents of the hard drives and electronic devices. Dkt. # 18, at 14-15.  Defendant also requests additional information concerning the capture of data from the H, N, and Y drives from Paula Burnett's office server.  Id. at 15-16.  The government responds it is no longer in possession of the forensic copies of hard drives and electronic devices, because the examiner who imaged the hard drives and electronic devices had already erased the data from a portable hard drive, and the data was inadvertently lost when the data was being transferred from the old office server onto a new office server.  Dkt. # 19, at 4-5.  As to the attachments to the report and data capture requests, the government responds that production of the complete attachments and H, N, and Y drives would result in the disclosure of privileged information with no relevance to this case, but it is willing to work with defendant to provide relevant and non-privileged evidence that complies with his discovery request.  Id. at 6-7.

On January 7, 2013, defendant sent the government discovery requests concerning two Hewlett Packard notebook computers and a Blackberry that were taken from Paula Burnett's office. As part of the government's investigation, the hard drives of the computers and the Blackberry were imaged onto a portable hard drive by a forensic examiner in February 2012, and the data was

7

downloaded onto the forensic examiner's officer server.  The forensic examiner erased the data from the portable hard drive after he indexed the imaged hard drives and Blackberry.  The examiner prepared two FTK reports[4] of his findings.  The forensic examiner worked for the Department of Justice Office of Inspector General (DOJ-OIG) in Dallas, Texas, and the DOJ-OIG acquired a new server after the FTK reports had been prepared.  The government states that the forensic copies of the imaged devices were "inadvertently lost"[5] when data was being transferred onto the new server, and the DOJ-OIG no longer has forensic copies of the imaged hard drives and Blackberry.  Dkt. # 19, at 5.  The government has produced copies of two FTK reports detailing the forensic examiner's findings.  The FTK reports identify search terms that were used in an attempt to locate potentially relevant documents on the imaged hard drives and Blackberry, and the reports contain a hyperlink to the documents located during the search.  The government has refused to produce an electronic version of the FTK reports with hyperlinks, because the hyperlinks in the FTK reports link to other files containing irrelevant or privileged information.  Dkt. # 19, at 7.  The government claims that no protective order could be fashioned that would allow it to produce an electronic copy of the reports.  Id.

---

[4]     The term "FTK" is not defined by the parties, but the Court assumes that the parties are referring to the Forensic Toolkit software used to conduct a forensic analysis of computers and other electronic devices.

[5]     The government does not explain how the images were "inadvertently lost," but the Court finds this explanation unsatisfactory and the government will be required to show that all possible efforts have been made to locate the imaged copies of the computer hard drives and Blackberry.  For example, computer servers are routinely backed up and data is stored in an alternate and secure location.  The government does not state if it has attempted to locate a backed up copy of the information.  If the government has not already done so, it should undertake all reasonable efforts to locate copies of the images and it should be prepared to explain to Court what steps have taken to locate the images.

Defendant argues that a key issue in this case is whether Paula Burnett received an e-mail with an attachment concerning the electronic surveillance of Vega and others and whether she opened the attachment. Dkt. # 18, at 15. Paula Burnett denies opening any attachment with information about the electronic surveillance at issue in this case, and defendant claims that loss of the forensic copies of the imaged hard drives and Blackberry will prevent him from preparing a complete defense to the charges against him.[6] Id. Defendant requested forensic copies of two hard drives and a Blackberry belonging to Paula Burnett. The government's response to this discovery request states as follows:

> RESPONSE: Our discussion with the case agents has revealed that the above three items were "imaged" by a DOJ-OIG forensic examiner. The practice used had the examiner "image" the three devices onto a portable hard drive and then transport that drive to his office in Dallas, Texas, for examination.
>
> Thereafter, the examiner loaded the "images" onto his office server, and then indexed the "images." Once that index was complete, the examiner erased any images off the portable hard drive. Next the examiner searched the "images," which were now on his server, and completed an FTK report of possible search terms submitted by the case agent.
>
> Following his search and compilation of the FTK report and the search term query matches, the examiner prepared a copy of the results. In response to your inquiry, this office contacted the examiner who then discovered that there was no longer the "imaged" version on his office server. Thus, no "forensic copy" of the three devices images is currently available to provide, even if required by Rule 16 and the Court's Discovery Order.

---

[6]    Defendant does not state whether he or a computer expert could actually determine by examination of the imaged copies if an attachment to an e-mail was opened. If not, the loss of the imaged copies may be substantially less prejudicial to defendant.

Dkt. # 18-11, at 1-2.  Defendant has cited no authority suggesting that the government is obligated to produce discovery that does not exist.[7]  Under the plain language of Rule 16(a)(1)(E), the discovery sought must be in the government's "possession, custody, or control," and discovery that no longer exists cannot reasonably be found to be in the government's possession, custody, or control.  However, defendant's motion to compel and the government's response raise some doubt as to whether the government has fully exhausted all means of locating the images and it is not clear that the imaged copies are truly "lost."[8]  The government should make additional inquiries to determine if it is possible to locate the imaged copies from sources other than forensic examiner, such as stored back-up files, and this matter will be considered at a telephonic discovery hearing if the parties are unable to resolve this aspect of defendant's motion to compel.

Defendant also seeks "all attachments listed in the Forensic Media Analysis Report dated March 27, 2012, all documentation related to the forensic imaging process, and all documentation related to either report dated March 27, 2012 and/or November 27, 2012."  Dkt. # 18, at 15.  Defendant has been provided copies of the FTK reports and, according to the government, the forensic examination located 504 files "which matched some aspect of the search term criteria,

---

[7]     The Court notes that the Tenth Circuit has recognized the doctrine of spoilation of evidence in the civil context.  <u>Henning v. Union Pacific R. Co.</u>, 530 F.3d 1206, 1219 n.6 (10th Cir. 2008).  However, the Tenth Circuit has not expressly adopted this doctrine in criminal cases.  <u>United States v. Hood</u>, 615 F.3d 1293, 1301 (10th Cir. 2010).  Even so, the Court may consider giving the jury an instruction concerning the loss of evidence and what inferences may be drawn if the imaged copies cannot be recovered.

[8]     The following questions are presented:  What email system was used?  Where are emails stored?  Where are the original hard drives of Paula Burnett?  Is there any backup stored data from the United States Attorney or the DOJ-OIG servers and what are the date ranges?  Is there backup stored data from the old server at DOG-OIG?  What is DOG-OIG's policy on retention of images after forensic analysis?  When was the new server installed?  Finally, and most importantly, do the FTK reports indicate whether Paula Burnett opened the email?

although there were numerous duplicate positives and false positives."  It appears that defendant is seeking production of the 504 files plus "any and all documentation related to" the forensic reports. The government states that it cannot turn over the complete file with a hyperlink to each of the 504 potentially relevant files, because this would result in the disclosure of privileged information relating to other investigations.  Dkt. # 19, at 5.

Defendant also asks the government to produce data captured from servers of the Executive Office of the United States Attorneys and the United States Attorney for the District of New Mexico.[9]  The government responds that e-mails and other documents have been preserved by the Executive Office of the United States Attorneys and the United States Attorney for the District of New Mexico, and it is in the process of searching these documents using targeted searches and search terms.  The government offers to allow the defendant to propose search terms for additional electronic searches, but it argues that no protective order could be "fashioned which would protect the Government's other interests and obligations to safeguard the electronic data . . . ."  Dkt. # 19, at 7.  After the government reviews all potentially relevant files, it would submit these documents to the Court for in camera review to determine if the documents must be produced to defendant.  At that point, the government would agree to produce to documents to defendant in native file format for review by defendant and an expert of his choosing.  Id.

As to defendant's requests for production of the attachments to FTK reports and documents located by the search of servers, the government has raised a reasonable concern that production of

---

[9]     A search of the e-mail databases as requested by defendant could be a means of locating the alleged e-mail to Paula Burnett with attachment concerning the electronic surveillance of Vega, and this could minimize prejudice to defendant if the images from the hard drives and Blackberry cannot be recovered.

the material in the form requested by defendant could result in the disclosure of privileged and irrelevant information, and a protective order would not minimize the risk of harm to the government.  However, it is probable that at least some of the attachments to the FTK reports and other documents could constitute Brady or Giglio material, and the government will be required to submit any potentially discoverable documents to the Court for in camera review.  If the Court determines that any documents should be produced to defendant, the parties will be required to submit a proposed protective order that will allow defendant to review the documents and protect the government's interests.

**B.**

Defendant asks the Court to compel the government to provide him all discovery that was provided to the defendants in the Villalobos case.  Dkt. # 18, at 16.  If his request for all of the Villalobos discovery is denied, he makes requests for certain evidence that was provided to the Villalobos defendants but that has not been provided to him.  The government responds that much of the Villalobos discovery has no relevance to the criminal charges against defendant and it already has provided him any of the Villalobos discovery that is material under Rule 16 or Brady.  Concerning defendant's specific requests, the government states that Jencks Act and Giglio material will be produced to defendant at an appropriate time before trial, but much of the discovery he seeks is not material and defendant's request to compel discovery should be denied.

As an initial matter, the Court finds that defendant's request for all discovery materials produced to the defendants in Villalobos is overly broad and the government is not required to provide defendant all of the Villalobos discovery.  The defendants in Villalobos were charged with conspiring to smuggle firearms to Mexico, making false statements during the purchase of firearms,

12

and firearms smuggling.  Defendant is not charged as a member of or participant in the firearms smuggling conspiracy.  Instead, defendant is accused of informing Vega or other persons of electronic surveillance and of making false statements to a federal agent.  Defendant claims that he needs the complete Villalobos discovery to prove that Vega or others were lying when they accused defendant of illegal conduct.  However, the parties in this case are not retrying the merits of the criminal charges against the Villalobos defendants, and the scope of this case is limited to whether defendant informed Vega or another person of electronic surveillance.  Thus, there is no reason for the government to produce all of the discovery provided to the Villalobos defendants, but the Court will consider defendant's requests for specific materials from the Villalobos discovery.

Defendant makes eight specific requests for material from the Villalobos discovery.  In support of these requests, he generally argues that the government is required to show why material would be relevant in Villalobos and not in this case.  Dkt. # 18, at 18-20.  The Court has rejected defendant's argument that the government is required to produce all of the Villalobos discovery, and he must make a plausible argument that the specific discovery he seeks is discoverable under Rule 16 or Brady.  United States v. Williams, 576 F.3d 1149, 1163 (10th Cir. 2009) (a defendant requesting an in camera inspection of alleged Brady evidence must make a plausible showing that judicial review of the government's file will lead to the discovery of material evidence).  Defendant makes the following specific discovery requests:

- Otero County incident reports

- Hand-written notes of agents

- Grand jury indictment report

- Tax material concerning Vega

- Manuel Ortega search warrant documents and photographs

- Blas Gutierrez search warrant documents and photographs

- Ricardo Gutierrez[10] search warrant documents and photographs

- Expenditure report

After reviewing defendant's specific requests, the materiality of certain requests is not immediately apparent and it appears that defendant is simply speculating that certain evidence from the Villalobos discovery may constitute Brady material. Unlike in a civil case, he is not entitled discover evidence merely because it is possibly relevant or that the evidence is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). Instead, discovery in a criminal case is more limited and he must make at least a plausible showing that evidence in the government's possession is discoverable under Rule 16, Brady, or a federal statute such as the Jencks Act, 18 U.S.C. § 3500.

Otero County Incident Reports

Defendant states that he does not know which of the Villalobos defendants is mentioned in the Otero County incident reports, but he believes the documents are relevant because they were produced to the Villalobos defendants. Dkt. # 15, at 18-19. The government responds that the reports concern Ian Garland, a defendant in Villalobos, but Garland is not a potential witness in this case and the reports are not relevant. Dkt. # 19, at 9. The mere fact that these reports were provided to the Villalobos defendants does not make them relevant in this case, and defendant has not made a plausible showing that the Otero County incident reports are material to his defense.

---

[10]     Manuel Ortega, Blas Gutierrez, and Ricardo Gutierrez were all named as defendants in Villalobos. Villalobos, 11-CR-487-RB, Dkt. # 2.

Handwritten Notes of Agents

Defendant asks the government to produce the notes used by agents when drafting official reports, because these notes were provided to the <u>Villalobos</u> defendants.  Dkt. # 15, at 19.  The government responds that it will produce any witness statements contained in the agents' notes to defendant at an appropriate time before trial, but the notes themselves are not discoverable.  Under the Jencks Act, the government is obligated to produce witness statements after a government witness has testified at trial and, under some circumstances, an agent's notes may contain a "statement" for the purpose of the Jenks Act.  <u>United States v. Wright</u>, 506 F.3d 1293, 1301 (10th Cir. 2007).  However, the Jencks Act does not require pretrial disclosure of witness statements and defendant has not shown that he is entitled to the immediate production of any statements recorded by government agents.  Based on the government's response, it appears that the government is willing to disclose Jencks Act statements to defendant before trial, and the Court will consider this issue at the pretrial conference.  <u>See</u> Dkt. # 19, at 13.  At the present time, defendant's request for immediate discovery of the handwritten notes of agents is denied.

Grand Jury Indictment Report

Defendant asks the government to produce a grand jury indictment report that was provided to the defendants in <u>Villalobos</u>.  Dkt. # 18, at 19.  The government responds that this is an administrative report that shows when the indictment in <u>Villalobos</u> was returned by the grand jury, and it is not required to provide this document to defendant.  Dkt. # 19, at 11.  Even though the government believes it is not required to produce this document, the government has agreed to provide the report to defendant to expedite the discovery process.  <u>Id.</u>  Thus, defendant's request to compel disclosure of the grand jury incident report is moot.

15

<u>Vega's Tax Records</u>

Defendant seeks the production of tax records seized from Vega's home, because this evidence may be used to impeach Vega, and Vega's credibility is a central part of the government's case against defendant.  Dkt. # 18, at 19.  The government responds that the tax records predate the <u>Villalobos</u> conspiracy and the tax records are not material.  Dkt. # 19, at 11.  Based on the facts alleged by defendant, Vega's credibility is a substantial part of the government's case against him and defendant has made a plausible argument that the tax records predating the conspiracy could be used to impeach Vega by comparing them to the records during the conspiracy.[11]  The parties are directed to meet and confer, and in the joint statement of unresolved discovery matters (discussed below), the parties shall advise the Court if <u>in camera</u> review of any documents will be required.

<u>Search Warrant Documents, Photographs, and Items</u>

Defendant asks the government to produce search warrant documents, photographs, and items seized as part of search warrants served on Manuel Ortega, Blas Gutierrez, and Ricardo Gutierrez.  Dkt. # 18, at 19-20.  Defendant's basis for requesting this evidence is solely his assertion that he is entitled to all documents provided to the <u>Villalobos</u> defendants.  <u>Id.</u>  The government has agreed to review the evidence related to the search warrant served on Blas Gutierrez and turn over any material evidence to defendant.   The government has also agreed to provide defendant

---

[11]     While the Court is giving defendant the benefit of the doubt that the tax returns could be material, the Court notes that it is unlikely that a person engaged in a firearms smuggling conspiracy would report income earned from the conspiracy on his tax returns, and whether income has been reported to the Internal Revenue Service has minimal impeachment value. Thus, the tax returns would not significantly impact a juror's assessment of Vega's credibility.

photographs taken during the execution of the search warrant served on Ricardo Gutierrez.[12]  As defendant has not advanced a plausible theory for production of this evidence, the Court finds that the government's response is sufficient and defendant's motion to compel is granted in part.[13]

Expenditure Report

Defendant requests production of an expenditure report and a request for advance funding that was provided to the defendants in Villalobos.  Dkt. # 18, at 20.  The government states that the documents do not relate to the Villalobos case and they were inadvertently provided to the Villalobos defendants. Dkt. # 19, at 12.  Defendant makes no attempt to show how these documents could be material to his defense and the Court will not construct a theory for defendant, and defendant's request for production of these documents is denied.

### C.

On January 16, 2013, defense counsel sent a letter containing numerous discovery requests to the government.  The government provided information in response to some of defendant's requests, but the government objected to or stated that it would provide a delayed response to many of defendant's discovery requests.  Defendant asks the Court to compel complete responses to each of his discovery requests.

---

[12]    The government's response does not mention defendant's request for materials relating to Manuel Ortega.

[13]    Should any dispute arise following the government's review of the evidence seized from Blas Gutierrez, the parties should meet and confer before seeking judicial intervention.  If the parties are still unable to resolve any dispute, the Court will consider a request for in camera review of the evidence.

Sealed Plea Agreements (Request # 1)

Defendant asks the government to produce all plea agreements, plea colloquies, and "proffer agreements" for each defendant that pled guilty in Villalobos, and he seeks any notes, recordings, or records of any interview given by Vega after he pled guilty.[14]  Dkt. # 18, at 20.  The government has agreed to provide Brady and Giglio material at a later date, but it has not provided defendant copies of any sealed plea agreements or related documents.

The Court has reviewed defendant's motion and it appears that he is primarily interested in discovering the contents of Vega's sealed plea agreement.  Defendant believes that Vega has a cooperation agreement with the government, and he seeks to learn the substance of the cooperation agreement and any specific information provided by Vega as part of his cooperation.  The government does not dispute that Vega's credibility is relevant or that defendant has a right to obtain information that could be used to impeach Vega.  Instead, the parties dispute when the government is required to disclose evidence in order to comply with Brady.  In United States v. Burke, 571 F.3d 1048 (10th Cir. 2009), the Tenth Circuit suggested that the untimely disclosure of Brady evidence could be a violation of a defendant's due process rights if the defendant were prejudiced by the delay.  Id. at 1055-56.  However, the untimely disclosure in Burke occurred at trial, and this case is not set for trial until September 2013.  Burke stands for the general proposition that the government is required to disclose certain impeachment evidence at trial or a reasonable time before

---

[14]     Defendant also asks the Court to unseal the plea agreements and plea colloquies in Villalobos, because information about the guilty pleas should be available to the public. However, requests to unseal should be addressed to the judge who authorized the filing of the plea agreements and related documents under seal.

trial.[15]  In this case, Vega's credibility is such a substantial issue that defendant cannot reasonably prepare a defense without access to evidence that could be used to impeach Vega, and this reasonably includes Vega's sealed plea agreement and related documents, as well as the specific information provided as part of his cooperation.  However, defendant has not shown that the credibility of other Villalobos defendants is as critical a matter.  Defendant's request for immediate production of sealed plea agreements, plea colloquies, and related discovery of Villalobos defendants other than Vega is denied without prejudice at this time, but the government is directed to take all necessary steps to provide defendant a copy of Vega's plea agreement, plea colloquy, and other related documents no later than April 1, 2013.

Agent's Notes from Interview of Paula Burnett (Request # 2)

Defendant claims that Paula Burnett denies making any statement to investigators that she advised her husband about the Villalobos case before March 10, 2011, and defendant asks the government to produce any notes made by agents during or after their interview of Paula Burnett. Dkt. # 18, at 21-22.  Defendant appears to believe that the notes will contain an alleged statement by Paula Burnett contradicting her denial.  The government responds that defendant is referring to an alleged oral statement made by Paula Burnett after she signed an affidavit, and the statement was included in a formal agency report that has already been provided to defendant.  Dkt. # 19, at 14. The government further states that it will produce any Jencks Act statements at a later date, but defendant argues that the government should be required to immediately produce any statements

---

[15]     The government proposes to provide defendant Jencks Act materials 14 days before trial to allow the defendant to review these materials before trial.  Dkt. # 19, at 13.  The Court will consider this issue at the pretrial conference, but the parties are encouraged to meet and confer to resolve this issue.

made by Paula Burnett during any interview.  He claims that the agents falsely attributed a statement to Paula Burnett and "it is likely that the agents' notes would reveal other mistakes . . . ."  Dkt. # 18, at 22.  To the extent that an agent's notes contain a statement attributed to Paula Burnett, the government has already produced to defendant a report containing the statement, and this aspect of defendant's discovery request is moot.   To the extent that defendant seeks the agents' notes, defendant is not entitled to the agent's notes merely because he believes the notes would be helpful in his investigation.  The mere fact that the parties disagree as to whether Paula Burnett made a particular statement does not show that agents made a "mistake," and he has not shown that the agents' notes are likely to contain Brady or Giglio material.  Defendant's discovery request and explanation do not contain a plausible argument that the agent's notes are inherently Brady or Giglio material, and the government is not required to produce the notes to defendant at this time.

Evidence Used by Agents during Witness Interviews (Request # 3)

Defendant asks the government to produce any "material shown and the sequence used in the showing to any and all witnesses during their interviews by the OIG agents."  Dkt. # 18, at 22. He claims that he needs this evidence to "understand the statements made by the witness."  The government responds that it is not in possession of any evidence meeting this discovery request and, even if it did have the evidence, it would not be required to produce the evidence under Brady or Rule 16.  The Court will assume that this evidence, if it exists, would be helpful to defendant, but he has not shown that this evidence is exculpatory or that it would impeach the credibility of any witness.  Defendant's request to compel discovery of material shown to witnesses and the order in which the materials were used is denied.

Internal E-mails Concerning Paula Burnett (Request # 4)

Defendant claims that he is entitled to review copies of internal e-mails from the United States Attorney's Office for the District of New Mexico and other governmental entities concerning "the recusal of Paula Burnett from the [Villalobos] case, the complete or partial recusal of the U.S. Attorney's Office for the District of New Mexico from the [Villalobos] case and/or keeping Paula Burnett as the criminal division chief in the U.S. Attorney's Office . . . until the time of indictment of her husband."  Dkt. # 18, at 22.  The government objects to this discovery request in its entirety and responds that the requested information is protected by the deliberative process privilege and the material constitutes work product that is not discoverable under Fed. R. Cri. P. 16(a)(2).

Under the deliberative process privilege, "memoranda and discussions within the Executive Branch leading up to the formulation of an official position" are privileged and do not have to be disclosed.  United States v. Zingsheim, 384 F.3d 867, 871-72 (7th Cir. 2004).  This privilege "allows the government to withhold documents and other materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997) (quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966)).  The government must make two showings to assert a valid deliberative process privilege: "the material must be predecisional and it must be deliberative."  Id.  The privilege does not shield the discovery of purely factual material that does not reflect any deliberation or an exercise of judgment on the part of the Executive Branch.  Electronic Frontier Foundation v. United States Dep't of Justice, ___ F. Supp. 2d ___, 2012 WL 3900737, *8 (D.D.C. Sep. 10, 2012).  In contrast to the deliberative process privilege, the work product privilege is intended to shield the "mental processes of the attorney"

21

from opposing counsel, and it provides an attorney "'a privileged area within which he can analyze and prepare his client's case.'"  In re Grand Jury Proceedings, 616 F.3d 1172, 1184 (10th Cir. 2010) (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)).  The protection of the work product privilege "extends to the production of material assembled by an attorney in preparation for impending litigation."  United States v. Ary, 518 F.3d 775, 783 (10th Cir. 2008) (quoting Thompson v. United States, 532 F.2d 734, 738 (10th Cir. 1976)).

At this time, the Court is unable to determine if the government has asserted a valid privilege because the parties have not provided any documents to the Court for in camera review or even given the Court a reasonable idea what is being requested.  It is possible that many of the documents sought by defendant do contain confidential materials or opinions that are not discoverable by defendant, and some of the documents may contain the advice of an attorney or an attorney's agent in anticipation of filing criminal charges against defendant.  However, some of the documents may be purely factual in nature and may not be protected by a deliberative process or work product privilege.  Defendant's discovery request is overly broad in that he seeks certain internal e-mails and documents that will clearly be protected by a privilege, but it is possible that investigative reports or factual findings may be constitute Brady or Giglio material that must be produced to him.  The government is directed to review the relevant documents with these parameters in mind, and counsel for the parties shall meet and confer in attempt to resolve this discovery dispute.  If the parties are unable to resolve this dispute, the Court will consider the matter at a telephonic hearing.

Findings as to Wrongdoing by Paula Burnett (Request # 5)

Defendant requests any report, memorandum, or notes showing that Paula Burnett was cleared of any wrongdoing by the United States Attorney's Office for the District of New Mexico.

He argues that a finding that Paula Burnett did not engage in misconduct would constitute exculpatory evidence, because it tends to show that he did not know of the Villalobos investigation before the indictment was filed.  The government responds that it will investigate to determine if a report containing any findings as to Paula Burnett's conduct was prepared and, if it exists, the report findings will be provided to defendant.  Dkt. # 19, at 18.  Based on the government's willingness to conduct a good faith search for this evidence, defendant's discovery request is denied but he may renew this aspect of his motion to compel if the government locates and refuses to produce evidence satisfying this discovery request.

Jail Calls and Correspondence (Request # 6)

Defendant requests "[a]ll jail calls, mail, correspondence, jail cell assignment and transport records."  Dkt. # 18, at 23-24.  His discovery request to the government does not specify whose calls or correspondence is being sought, but it appears from his motion to compel that he is seeking the production of jail calls and correspondence of Vega, Blas Gutierrez, and Espinosa.  Dkt. # 18, at 24.  The government responds that it has produced several relevant jail calls and it will produce any other jail calls by Vega in its possession.  Dkt. # 19, at 18.  However, the government states that it has no obligation to obtain evidence not already in  possession of the United States or its agents.  The government argues that the detention facility is not an arm of the prosecution and it can not be deemed to be in "possession" of records of jail calls or correspondence maintained by the detention facility.  See United States v. Merlino, 349 F.3d 144, 155 (3d Cir. 2003) (Bureau of Prisons not an arm of the prosecutor for the purpose of Brady).  The Court finds that the government's response is satisfactory and it is clear that the government is actively engaging in efforts to supplement its initial response.  Defendant has not shown that the government is obligated to conduct any

23

additional investigation on his behalf, and the government will not be required to produce jail calls, correspondence or similar information that is not its possession or the possession of its agents.

Grand Jury Transcript (Request # 7)

Defendant seeks, pursuant to Rule 16(a)(1)(B)(ii), production of a portion of a grand jury transcript containing an oral statement made by him.  Dkt. # 18, at 24.  The government responds that the "substance of oral statements of the Defendant have already been produced to the defense in the form an agency report as well as an intercepted telephone call."  Dkt. # 19, at 24.  Under Rule 16(a)(1)(B)(ii), the government must disclose to the defendant "the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation . . . ."  Defendant has not shown that the statements at issue were made in response to interrogation and he is not entitled to receive this portion of the grand jury transcript under Rule 16(a)(1)(B)(ii).  Instead, he must meet the requirements of Fed. R. Crim. P. 6(e) to obtain a copy of a grand jury transcript.  The Supreme Court has "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."  Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 219 (1979).  Under Rule 6(e), a party seeking grand jury materials must show "(1) the materials are needed to avoid possible injustice in another judicial proceeding, (2) the need for disclosure is greater that the need for continued secrecy, and (3) the request is structured to cover only material so needed."  In re Grand Jury 95-1, 118 F.3d 1433, 1437 (10th Cir. 1997).  The substance of the oral statements has already been disclosed to defendant in an agency report, and the government is not required to produce the statements to defendant in every possible document in which the statements are contained.  Thus, no injustice will result if defendant is not permitted to review the portion of the

24

grand jury transcript in which his statements were read to the grand jury, and his request for a portion of the grand jury transcript is denied.

Reports from Law Enforcement Agencies (Request # 8)

Defendant asks the government to produce all reports from state and federal law enforcement agencies concerning the Villalobos case.  Dkt. # 18, at 24-25.  The government responds that it is not currently in possession of all such reports but it has directed that "agents make inquiry with any law enforcement agency which might have been involved in the *Villalobos* investigation and thus considered part of the prosecution in that matter . . . ."  Dkt. # 19, at 24.  This inquiry is ongoing and the government states that it will produce to defendant any reports as required by Rule 16 or Brady.  Defendant's request for all reports of federal and state law enforcement agencies is overbroad and denied, but the government should maintain contact with its agents to ensure that any Brady material is produced in a timely manner.

Employment and Disciplinary Records of Vega (Request # 9)

Defendant seeks the production of any application for employment or disciplinary records concerning Vega.  Dkt. # 18, at 25.  The government responds that it is not in possession of any records meeting this request.  Defendant argues that the government has a duty under Brady to seek out evidence that could be used to impeach Vega.  However, defendant misunderstands the government's obligations under Brady.  A prosecutor has a "duty to learn of any favorable evidence known to others acting on the government's behalf in this case . . . ."  Strickler v. Greene, 527 U.S. 263, 281 (1999) (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)).  This does not mean that a prosecutor can be compelled to conduct an investigation on defendant's behalf to seek out information merely because a defendant speculates that further investigation could lead to evidence

25

that could be used impeach a government witness.  In this case, the government states that it and its agents are not in possession of information responsive to defendant's discovery request, and the government has complied with its duty under Brady.  Thus, defendant may conduct his own investigation into Vega's employment and disciplinary history, but his request for additional discovery from the government is denied.

Tax Returns for Vega, Gutierrez, and Espinoza (Request # 11)

Defendant requests the tax returns from the tax years of 2006 to 2011 for Vega, Blas Gutierrez, and Espinoza.  Dkt. # 18, at 25-26.  The government responds that it does not possess most of the information requested by government, and the tax returns have no relevance to criminal charges against defendant.  The Court agrees that the tax returns have minimal relevance to show whether defendant illegally gave another person notice of electronic surveillance, and the parties will not be relitigating the merits of the Villalobos case.  One of the central issues in this case is Vega's credibility and the Court will conduct an in camera review of any of Vega's tax returns that are in the possession of the government or its agents, but defendant has not shown that the tax returns of Blas Gutierrez or Espinosa would be helpful to impeach these witnesses.  Defendant's discovery request is denied as to the tax returns of Blas Gutierrez and Espinosa, but the Court will conduct an in camera review of Vega's tax returns that are in the government's possession.

Investigations Resulting from Witness Cooperation (Request # 13)

Defendant requests a list of all investigations that have resulted from Vega's and Blas Gutierrez's cooperation with the government.  Dkt. # 18, at 26.  The government argues that this information is irrelevant to the criminal charges against defendant and producing this information would likely jeopardize ongoing investigations.  Brady and its progeny do not require the

government to provide a defendant information about an ongoing investigation of other persons who are not on trial or who are not witnesses.  United States v. Conner, 752 F.2d 504, 507 (10th Cir. 1985).  In this case, any investigations of other persons have no bearing on defendant's guilt or innocence or on the credibility of any witness.  Defendant appears to be arguing that this information could be used to impeach Vega or Blas Gutierrez's credibility because, if Vega and Blas Gutierrez provided false information in other investigations, it would detract from the credibility of their allegations against defendant.  At trial, defendant could ask a government witness if Vega or Gutierrez have provided reliable information in other investigations, but a list of other ongoing investigations would not be material under Brady and giving this information to defendant could interfere with those investigations.  Defendant's request for a list of investigations instigated based on Vega's or Blas Gutierrez's cooperation is denied.

E-Mails, Memoranda, and Correspondence Concerning the
"Fast and Furious" Investigation

Defendant seeks discovery of any evidence that would link the firearms smuggling conspiracy in Villalobos to the "Fast and Furious" investigation.  Dkt. # 18, at 26.  Defendant clarifies that he is not seeking the release of any sensitive documents, but he is asking the government to release the information in some form if there is a connection between the two investigations.  The government responds that this information is irrelevant to the criminal charges against defendant, because defendant is accused of illegally giving persons notice of electronic surveillance in a firearms smuggling case that is separate from the "Fast and Furious" investigation.  Dkt. # 19, at 28.  The Court has reviewed defendant's discovery request and does not find that the information he seeks, if it exists, would be discoverable under Brady or Rule 16.  Even if the Court were to assume that there were a connection between the two investigations, the criminal charges

27

against defendant do not concern the substance of any alleged firearm smuggling conspiracy, and this case is limited to the discreet issue of whether defendant knew of and illegally provided persons notice of electronic surveillance.  Defendant has not made a plausible showing that the information he seeks is material, and this discovery request is denied.

Internal E-mails and Memoranda Concerning Interviews of
Defendant and Paula Burnett (Request # 15)

Defendant asks the government to produce all internal e-mails, memoranda, and correspondence discussing the timing of interviews of defendant and Paula Burnett.  Dkt. # 18, at 26.  The government responds that the requested information is the internal work product of the Department of Justice and the timing of the interviews is not relevant.  Dkt. # 19, at 28.  The manner in which the government chose to investigate criminal charges against defendant may be relevant, but a defendant is not permitted to inspect "internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).  In any event, defendant already knows when he and his wife were interviewed by government agents.  The government has asserted a valid work product privilege, and defendant is not entitled to discovery the internal e-mails, memoranda, and correspondence concerning the timing of interviews.

**D.**

On January 23, 2013, defendant submitted a final written request for discovery to the government, and he sought the production of "reports, memos, and notes . . . concerning the placement of any and all GPS trackers" in the Villalobos investigation.  Dkt. # 18, at 27.  He claims that this evidence would tend to show whether the Villalobos defendants were aware of an investigation into illegal firearm smuggling.  The government responds that it has already provided

28

defendant discovery showing that the Villalobos defendants discovered GPS trackers while the investigation was ongoing.  Dkt. # 19, at 19.  Thus, defendant has already been provided with discovery establishing that the Villalobos defendants were aware of the GPS trackers, and this seems to be the pertinent information sought by defendant.[16]  Defendant's request for additional discovery concerning the use and placement of GPS trackers in the Villalobos investigation is denied.

### E.

Defendant orally requested the names of all persons who monitored or had access to the wiretaps, as well as the dates and times of such monitoring, and he "respectfully suggest[s]" that this evidence is material under Brady.  Dkt. # 18, at 28.  The government states that it is not in possession of this information and, even if it were, this would not be discoverable under Brady or Rule 16.  Dkt. # 19, at 29.  The Court has reviewed defendant's discovery request and finds that the information he seeks is not material under Brady.  Defendant does not explain how this evidence could be exculpatory or could be used to impeach a government witness, and the transcripts of the wiretaps speak for themselves in terms of the contents of any intercepted communications.

---

[16]   The Court notes that the timing of the Villalobos defendants' discovery of the GPS trackers could be directly relevant to the government's case against defendant and, if this specific information has not been provided to defendant, the government is directed to supplement its discovery responses.  If Vega knew of the GPS trackers before he met with defendant, it could be inferred that Vega already knew he was under surveillance in February 2011 and this fact would be relevant.

**IT IS THEREFORE ORDERED** that defendant's Motion to Compel Production of Information pursuant to the Brady Doctrine and Rule 16 with Supporting Authorities (Dkt. # 18) is **granted in part** and **denied in part** as stated above.

**IT IS FURTHER ORDERED** that the March 13, 2013 hearing on discovery motions is **stricken**.  The parties are directed to file a joint statement of unresolved discovery matters no later than April 1, 2013 and, if necessary, the Court will set a telephonic discovery hearing sometime in April 2013.

**IT IS FURTHER ORDERED** that, if a telephonic discovery hearing is held, the parties shall submit any material for in camera review at least seven days before the hearing.

**DATED** this 8th day of March, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE